Sarah M. Staudinger (#032696)
CITY OF MESA ATTORNEY'S OFFICE
MS-1077
P.O. Box 1466
Mesa, Arizona 85211-1466
Telephone: (480) 644-2343
mesacityattorney@mesaaz.gov

Attorneys for Defendant Austin Figueroa

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shone Dieoute Gholston,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Mesa Police Department, et al.,<br><br>　　　　　Defendants. | Case No. CV-18-04901-PHX-SMB (ESW)<br><br>**DEFENDANT AUSTIN FIGUEROA'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Honorable Eileen S. Willett) |

Defendant Officer Austin Figueroa moves for summary judgment. This Motion is supported by the following Memorandum and Defendant's LRCiv 56.1 Statement of Facts ("SOF").

## MEMORANDUM

### Introduction

Officer Figueroa is entitled to summary judgment because (1) the force he used was objectively reasonable, and (2) he is entitled to qualified immunity. Plaintiff committed a felony, ignored Officer Figueroa's verbal instructions, ran from Officer Figueroa, and physically threw Officer Figueroa's arm off him to prevent being detained. Additionally, Plaintiff reached into his back pocket, a movement that Officer Figueroa knew to be associated with accessing a weapon. Thus, Officer Figueroa deployed his taser a single time to quickly and safely detain Plaintiff. For

these reasons, the force used by Officer Figueroa was objectively reasonable and he is entitled to qualified immunity.

**Statement of Facts**

On September 8, 2017, Officer Figueroa was driving his marked police vehicle in an alley known to have an increased amount of crime and drug use. [SOF ¶ 1]  While driving in the alley, Officer Figueroa saw a man, later identified as Plaintiff, preparing to urinate on a wall. [SOF ¶ 2]  When Plaintiff spotted Officer Figueroa, Plaintiff quickly tossed a syringe onto the ground from his pocket. [SOF ¶ 3]  Officer Figueroa activated his emergency lights, exited his vehicle, and instructed Plaintiff to stop. [SOF ¶ 5]  Plaintiff ignored Officer Figueroa's verbal instructions and attempted to walk around Officer Figueroa to get away. [SOF ¶ 7]  Officer Figueroa reached out to grab Plaintiff's arm and Plaintiff pulled his arm away and began to run. [SOF ¶ 8]

Officer Figueroa pursued Plaintiff on foot. [SOF ¶ 9]  When Officer Figueroa caught up to Plaintiff, he grabbed the back of Plaintiff's shirt. [SOF ¶ 13]  Plaintiff then swung his arm around, knocked Officer Figueroa's arm off and was able to break Officer Figueroa's grip. [SOF ¶ 14]  Plaintiff then reached into his back pocket. [SOF ¶ 15]  Officer Figueroa, fearing that Plaintiff was accessing a weapon, tased Plaintiff a single time. [SOF ¶ 16]  Plaintiff fell to the ground and Officer Figueroa quickly pulled Plaintiff's hand out of his back pocket and put Plaintiff in handcuffs. [SOF ¶ 17]

Officer Figueroa performed a name search and discovered that Plaintiff had an outstanding warrant for his arrest in Phoenix. [SOF ¶ 19]  Officer Figueroa searched Plaintiff and found a used glass pipe and small baggie of a white crystal substance. [SOF ¶ 20]  Later, during a Mirandized interview, Plaintiff admitted to Officer Figueroa that the substance found in his pocket was methamphetamine and that he uses the pipe to smoke it. [SOF ¶ 21]  A field test confirmed that the substance was methamphetamine. [SOF ¶ 22]

Plaintiff was charged with possession of a dangerous drug, two counts of possession of

drug paraphernalia, and resisting arrest. [SOF ¶ 23] Plaintiff pleaded guilty to the felony of possession of a dangerous drug, with a prior felony conviction. [SOF ¶ 24]

## Argument

**I.     Officer Figueroa's Actions Were Objectively Reasonable.**

A claim of excessive force is "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Scott v. Harris*, 550 U.S. 372, 381 (2007). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 396-97. The proper application of the reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the Defendant Officers and others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Officers are not required to use the least intrusive degree of force possible…whether officers hypothetically could have used less painful, less injurious, or more effective force in executing an arrest is simply not the issue." *Bryan v. MacPherson*, 630 F.3d 805, 818 (9th Cir. 2010) (internal citations omitted). Rather, a range of force may be reasonable under the circumstances. *Id.*

Here, Officer Figueroa's actions were objectively reasonable. Officer Figueroa was patrolling an area that he knew to have an increase in crime and drug use. [SOF ¶ 1] With that backdrop, Officer Figueroa saw Plaintiff preparing to urinate in public and, as soon as Plaintiff spotted Officer Figueroa, Plaintiff tossed a syringe on the ground. [SOF ¶¶ 2-3] To a trained and experienced officer, this was a sign that Plaintiff may have used drugs recently and may be under

the influence. [SOF ¶ 4] Plaintiff then ignored Officer Figueroa's instruction to stop, pushed past Officer Figueroa, hit Officer Figueroa's arm off him, and fled. [SOF ¶¶ 7-8, 13-14] This behavior demonstrated Plaintiff's willingness to do whatever he could to avoid arrest.

While fleeing, Plaintiff reached into his back pocket. [SOF ¶ 15] Based on Officer Figueroa's training, along with Plaintiff's lack of cooperation and clear intention to avoid arrest, Officer Figueroa concluded that Plaintiff may be accessing a weapon. [SOF ¶ 16] Additionally, Officer Figueroa was the only officer on scene and did not have any backup support. [SOF ¶ 6] Thus, Officer Figueroa deployed his taser a single time. [SOF ¶ 16]

Officer Figueroa was able to handcuff Plaintiff within a matter of seconds after deploying the taser. [SOF ¶ 17] The use of the taser under these circumstances was a safe and effective way for Officer Figueroa to quickly subdue and detain Plaintiff without escalating the situation. *Sanders v. City of Fresno*, 551 F.Supp.2d 1149, 1170-71 (E.D. Cal. 2008) (citing *Draper v. Reynolds*, 369 F.3d 1270 (11th Cir. 2004) (finding that use of a taser during a tense traffic stop when suspect was not following verbal instructions and was being uncooperative was reasonable and that "the single use of a taser gun may well have prevented a physical struggle and serious harm to either [the suspect] or [the officer].")

Based on these circumstances, utilizing a taser was objectively reasonable. *Id.* (finding that a single application of a taser during a traffic stop that was a "difficult, tense, and uncertain situation" was reasonable).

### A.  The Severity Of The Crimes At Issue Weigh In Favor Of Officer Figueroa.

In this case, Plaintiff was in an alley that Officer Figueroa knew to have an increase in crime and drug use. [SOF ¶ 1] Plaintiff was clearly about to urinate in public and also threw a syringe out of his pocket. [SOF ¶¶ 2-3] When Plaintiff saw Officer Figueroa, he blatantly disregarded Officer Figueroa's instruction to stop, pushed past him, and fled, running down the alley towards a populated street. [SOF ¶¶ 7-14] When Officer Figueroa caught up to Plaintiff

again, Plaintiff threw his arm back in order to knock Officer Figueroa's arm off and break free. [SOF ¶¶ 13-14]  Arising out of these events, Plaintiff was charged with possession of a dangerous drug, two counts of possession of drug paraphernalia, and resisting arrest.  [SOF ¶ 23]  Plaintiff pleaded guilty to the felony of possession of a dangerous drug.  [SOF ¶ 24]

Given the nature of Plaintiff's crimes, the first *Graham* factor weighs in favor of Officer Figueroa.  *Draper*, 369 F.3d at 1278 (the Court found no excessive force in using a taser on an uncooperative, agitated suspect, who has been stopped for a minor traffic infraction and never touched the officer.)

### B. Plaintiff Posed An Immediate Threat To The Safety Of Officer Figueroa And Others.

On the day of his arrest, Plaintiff was an immediate threat to the safety of Officer Figueroa and others.  Plaintiff demonstrated a willingness to do whatever it took to avoid arrest.  Not only did he ignore verbal instructions to stop, but he also physically threw Officer Figueroa's arm from him in order to continue fleeing.  [SOF ¶¶ 7-14]  Critically, Plaintiff reached into his pocket, a movement officers are trained to recognize as threatening, as Plaintiff could have been accessing a weapon.  [SOF ¶¶ 15-16]  Officer Figueroa was alone in the alley with Plaintiff, without backup from other officers.  [SOF ¶ 6]  Plaintiff's willingness to run, fight off Officer Figueroa's attempt to restrain him, and his action of reaching into his pocket all demonstrated that Plaintiff was an immediate threat to Officer Figueroa's safety.

Additionally, Plaintiff was running towards an area populated with pedestrians and traffic. [SOF ¶ 10]  There is a grocery store and 99-cents store on either side of the road, and Plaintiff was running towards Main Street, which has two-way traffic and a bus stop.  [SOF ¶¶ 11-12] Officer Figueroa reasonably suspected that Plaintiff could be under the influence of illegal drugs, since Plaintiff was in a high drug use area and had just thrown a syringe on the ground.  [SOF ¶

4] Plaintiff fleeing here, especially if he was under the influence, presented a danger to the pedestrians and drivers in the area.

For these reasons, Plaintiff was a threat to the safety of Officer Figueroa and others, justifying the use of a taser. *Kelly*, 2017 WL 3582306 at *4 (determining that officers reasonably concluded suspect was an immediate threat because suspect had an 'agitated manner,' refused to follow verbal commands to sit down, and started yelling, flailing, and kicking).

### C.    Plaintiff Attempted To Evade Arrest By Flight And Actively Resisted Arrest.

Plaintiff clearly tried to evade arrest by flight and resisted arrest. When Plaintiff spotted Officer Figueroa, he tried to conceal his criminal activity by throwing the syringe on the ground. [SOF ¶ 3] Plaintiff ignored instructions to stop, pushed past Officer Figueroa, threw Officer Figueroa's hand off his shirt, and ran. [SOF ¶¶ 7-14] Plaintiff admitted that he knew it was a police vehicle that approached him [SOF ¶ 2], that Officer Figueroa instructed him to stop [SOF ¶ 7], and that he knew Officer Figueroa was trying to stop him as he ran away. [SOF ¶¶ 7-9] Nevertheless, Plaintiff admitted to continuing to run away from Officer Figueroa. [SOF ¶¶ 7-14] Due to these actions, Plaintiff was charged with resisting arrest. [SOF ¶ 24]

For these reasons, the third *Graham* factor weighs in favor of Officer Figueroa. *Chew v. Gates*, 27 F.3d 1432, 1442 (9th Cir. 1994) (fleeing from officers and offering physical resistance to the arresting officers amounts to actively resisting arrest); *Sheridan v. Trickey*, 2010 WL 5812678 at *6-7 (D. Or. 2010) (holding that suspect made significant efforts to resist arrest by being uncooperative, defying officer's commands, struggling when officer attempted to arrest him, and moving his arm in a threatening way).

With that said, each of the three *Graham* factors favor Officer Figueroa, his actions were objectively reasonable, and Officer Figueroa is entitled to summary judgment.

**II.      Officer Figueroa Is Entitled To Qualified Immunity.**

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011); *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) ("the agents are entitled to qualified immunity . . . [i]f the answer to either question is 'no'").

To be "clearly established" for purposes of the qualified immunity analysis, a right must be sufficiently clear "that *every* reasonable official would [have understood] that what he is doing violates that right." *Reichle*, 132 S. Ct. at 2093 (emphasis added and citation omitted). A right is rarely clearly established "absent any published opinions on point or overwhelming obviousness of illegality." *Sorrels v. McKee*, 290 F.3d 965, 971 (9th Cir. 2002); *Hunter v. Bryant*, 502 U.S. 224, 228 229 (1991) (qualified immunity provides "ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law"; the inquiry is not "whether another reasonable or more reasonable interpretation of events can be constructed . . . after the fact") (citation and internal quotations omitted).

As discussed in Section I, the use of force to apprehend a fleeing felon, like Plaintiff, was objectively reasonable. Moreover, Officer Figueroa did not violate any "clearly established" law. Specifically, there is no clearly established law preventing Officer Figueroa from pursuing Plaintiff on foot, grabbing his shirt and arm, and utilizing a taser when Plaintiff ignored verbal instructions, threw Officer Figueroa's arm off him, and made a movement that Officer Figueroa reasonably concluded could be used to access a weapon.

Rather, case law protects the actions of Officer Figueroa in this scenario. *Sanders*, 551 F.Supp.2d at 1172 (citing *Russo v. Cincinnati*, 953 F.2d 1036 (6th Cir. 1992) and *Draper*, 369 F.3d 1270 (11th Cir. 2004)) (finding that use of a taser was reasonable and the officer was entitled to qualified immunity, the Court relied on prior case law: "*Russo* and *Draper* indicate that Taser

use is a less lethal form of force and that use of the Taser may be appropriate to diffuse a situation so as to prevent the need for escalation.  Further, *Russo* and *Draper* involve situations in which Tasers were applied when there was no struggle or physical resistance occurring," and the courts found the use of a taser in those circumstances reasonable.  The Court concluded, given the appearance and conduct of the parties involved, "a reasonable officer in [the officer's] position could reasonably believe that [his] conduct was consistent with *Russo* and *Draper*, and thus, the Fourth Amendment").  Since Officer Figueroa did not violate a clearly established law and acted consistent with case law, Officer Figueroa is entitled to qualified immunity.

## Relief Requested

For the reasons stated herein, Officer Figueroa requests that the Court enter summary judgment in his favor as to all claims.

Dated this 18th day of November, 2019.

  /s/ Sarah M. Staudinger
Sarah M. Staudinger
Assistant City Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and I served the attached document by U.S. Mail on the following, who is not a registered participant of the CM/ECF System:

Shone Dieoute Gholston #143259
ASPC Lewis - Barchey Unit - 4F10L
P.O. Box 3200
Buckeye, AZ 85326
*Pro Se Plaintiff*

/s/ Mirna Poiani